UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Daniel D. Dorneanu,<br><br>Plaintiff,<br><br>v.<br><br>Graco Inc. and Graco Minnesota Inc.,<br><br>Defendants. | ) | C/A No. 2:21-cv-1142-DCN-MHC<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, proceeding pro se, filed this action alleging patent infringement against Defendants Graco Inc. and Graco Minnesota Inc. (collectively, "Graco" or "Defendants"). Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint for Improper Venue and for Failure to State a Claim ("Motion to Dismiss"), filed pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 39. Plaintiff filed his Response in Opposition, ECF No. 42, Defendants filed a Reply, ECF No. 44, and Plaintiff filed a Sur-Reply, ECF No. 45. The Motion to Dismiss is ripe for review.[1]

## APPLICABLE LAW

### A. Rule 12(b)(3)

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, parties are permitted to file motions to dismiss for improper venue. Fed. R. Civ. P. 12(b)(3); *see Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 209 (4th Cir. 2007). "When a defendant objects to venue under Rule

[1] All pretrial proceedings in this case were referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. This Report and Recommendation is entered for review by the District Judge.

12(b)(3), the plaintiff bears the burden of establishing that venue is proper." *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 616 (D.S.C. 2013) (citation and internal quotation marks omitted). However, the plaintiff is required "to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citing *Mitrano v. Hawe*s, 377 F.3d 402, 405 (4th Cir. 2004)). "In assessing whether there has been a prima facie venue showing, [the court] view[s] the facts in the light most favorable to the plaintiff." *Id.* Moreover, "[o]n a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Id.* at 365–66. To grant a motion under Rule 12(b)(3), the court must find that venue is improper. *See* Fed. R. Civ. P. 12(b)(3).

A case filed in an improper venue must be dismissed, or, if it is in the interest of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a). Under the general venue statute, a civil action may be brought, and venue is proper, in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action

28 U.S.C. § 1391(b).

**B. Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v.*

*Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses."). Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, the court is required to accept the allegations in the pleading as true and draw all reasonable factual inferences in favor of the party opposing the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Moreover, the court must evaluate "the complaint in its entirety, as well as documents attached or incorporated into the complaint." *Id.* at 448. The court may consider a document not attached to the complaint, so long as the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "A complaint should not be dismissed as long as it provides sufficient detail about the claim to show that the plaintiff has a more-than-conceivable chance of success on the merits."

*Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks and brackets omitted).

Pro se pleadings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, principles requiring generous construction of pro se complaints do "not require courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Giving liberal construction does not mean that the court can ignore a pro se plaintiff's clear failure to allege facts that set forth a cognizable claim. *See Weller v. Dept. of Soc. Servs., City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) ("Only those questions which are squarely presented to a court may properly be addressed."). Thus, even under this less stringent standard, a pro se complaint is still subject to summary dismissal. *Estelle*, 429 U.S. at 106–07.

## BACKGROUND FACTS[2]

Plaintiff is the owner by assignment of all right, title, and interest in and to: (1) U.S. Patent No. 10,426,980 (the "980 Patent") titled "Smart Spray Foam Respiratory Mask," which was duly and legally issued on October 1, 2019; and (2) U.S. Patent No. 10,427,703 (the "703 Patent") titled "Remote Monitoring and Reporting for Mobile Plural Component Manufacturing Rigs," which was duly and legally issued on September 24, 2019 (collectively, "Patents"). ECF No. 36 ¶ 18. These Patents "describe innovative aspects of remote monitoring, reporting, diagnosing, and controlling systems for plural component spray applicator machines and mobile manufacturing rigs." *Id.* ¶ 19. Plaintiff alleges that that the claimed technology of these Patents "is not well understood, conventional, routine, or generic." *Id.* According to Plaintiff, the Patents "were written

---

[2] The facts, and all inferences therefrom, are construed in the light most favorable to Plaintiff for purposes of ruling on Defendants' Motion to Dismiss. *See Aggarao*, 675 F.3d at 366; *Kolon Indus., Inc.*, 637 F.3d at 440.

to allow the new developed and improved technology to benefit the safety, efficiency, and performance of the spray foam insulation application industry in the US, for any and all brands of spray foam insulation application equipment manufacturer." *Id.* ¶ 24.

Plaintiff alleges that Defendants make, use, offer for sale, sell, and import their Reactor Connect product alone or in combination with spray foam rig equipment in the United States. *Id.* ¶ 26. According to Plaintiff, Defendants learned in early 2017 of the provisional applications for the 980 Patent and the 703 Patent and that Plaintiff "own[ed] the intellectual property for modification of parameters of a Spray Polyurethane Foam proportioner within a mobile rig using a mobile application." *Id.* ¶ 27. Beginning in early 2017, the parties discussed possible options for a business agreement allowing Defendants access to the newly developed technology discussed in the Patents, but no agreement was reached. *Id.* ¶ 29.

In June 2017, the "JobSight" application product, which Plaintiff owned and designed based on the technologies described in the Patents, was offered for sale to the public. *Id.* ¶ 31. JobSight "was designed and built for functionality with all spray foam machine brands and models, including Graco machines." *Id.* That same month, Defendants informed their agents that JobSight had been released and that they were "working on an app that will be able to control the Reactor 2 system using a phone," with the goal to release the product in the upcoming months. *Id.* ¶ 32.

In October 2017, the "Sky" application product, which Plaintiff owned and designed based on the technologies described in the Patents, was offered for sale to the public. *Id.* ¶ 33. In 2018 Defendants began offering for sale a product called the "Reactor app," which had similar functionality as JobSight and Sky and described in the Patents. *Id.* ¶ 34.

Plaintiff alleges that Defendants, after becoming aware of the provisional applications for and technology described in the 980 and 703 Patents, "deliberately altered their patent application

. . . titled 'Remote Monitoring for Fluid Applicator System[,]' which was in the examination phase with the [U.S. Patent and Trade Office (USPTO),] and deliberately introduced a brand new independent claim [Claim 17] which described technology similar to that described in" the 980 and 703 Patents. *Id.* ¶¶ 41–42. The USPTO granted Defendants' revised Claim 17, which Plaintiff alleges contains a number of anomalies. *Id.* ¶ 42. Plaintiff alleges that Defendants have used Claim 17 "to threaten, intimidate and litigate against other competitive products in the industry, including [Plaintiff's] product 'JobSight,' in an effort to create a monopoly of such remote monitoring technology and to force spray foam insulation contractors into having to purchase Graco spray machines if they would like to utilize such remote monitoring technology." *Id.* ¶ 43.

Plaintiff alleges that Graco is subject to a consent order in the plural component spray equipment industry issued by the Federal Trade Commission (FTC) in 2013. *Id.* ¶ 44. According to Plaintiff, the FTC's complaint alleges that Graco's acquisitions eliminated head-to-head competition, leaving the spray foam market "almost entirely in Graco's hands," such that Graco raised prices for its products, reduced product options, reduced innovation, and took steps to ensure that its distributors would distribute only Graco's products. *Id.* Plaintiff alleges that the consent order, in effect for ten years, seeks to deter similar future behavior by Graco. *Id.*

The USPTO duly and legally issued the 980 Patent and the 703 Patent in 2019. That same year, Defendants released the "Reactor Connect" product, which had "additional functionality and technology as described in the 980 Patent and the 703 Patent." *Id.* ¶ 36.

In 2019, Defendants sent Plaintiff a cease-and-desist letter claiming that the JobSight product infringes on Claim 17 of Graco's patent. *Id.* ¶ 120. In February 2019, Graco's president visited Plaintiff in Charleston, South Carolina, allegedly to pressure Plaintiff "to release a product technical package system, for Graco evaluation, without an NDA (Non-Disclosure Agreement) or

other agreement in place." *Id.* ¶ 121. Although the Graco president told Plaintiff in writing in February 2019 that they would provide an NDA, the president indicated in August 2019 that he did not have any interest in signing an NDA. *Id.* Plaintiff alleges that as a result of duress and intimidation tactics, he was forced to discontinue all JobSight product sales in 2019–2020. *Id.* ¶ 123.

In April 2021, Plaintiff sent a cease-and-desist letter to Defendants, informing them that the Reactor Connect product allegedly infringed the 980 Patent and the 703 Patent. *Id.* ¶ 37. Plaintiff alleges that Defendants' continued use, offer for sale, sale, and import of the Reactor App and Reactor Connect products alone or in combination with spray foam rig equipment demonstrate willful infringement by Defendants of the Patents. *Id.* ¶ 39.

In his Second Amended Complaint, Plaintiff alleges the following causes of action: (1) infringement of Claim 1 of the 703 Patent directly or under the doctrine of equivalents; (2) infringement of Claim 4 of the 703 Patent directly or under the doctrine of equivalents; (3) infringement of Claim 1 of the 980 Patent directly or under the doctrine of equivalents; (4) tortious interference and violation of a 2013 consent order from the FTC; (5) violation of the Anti-Competitive Practices Act; (6) intellectual property theft; (7) defamation; (8) duress; and (9) intentional infliction of emotional distress. *Id.* at 12–41.

**DISCUSSION**

Defendants move to dismiss Plaintiff's Second Amended Complaint for improper venue and for failure to state a claim upon which relief may be granted. Alternatively, Defendants move to transfer venue to the District of Minnesota. For the reasons that follow, the undersigned finds that Defendants' Motion should be granted, in part, and the action transferred to the District of Minnesota.

## I. Propriety of Venue in South Carolina

Defendants contend that, in light of *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), venue for Plaintiff's claims for patent infringement is improper in this District under 28 U.S.C. § 1400(b), because Defendants are not incorporated under the laws of the State of South Carolina and do not have "a regular and established place of business" in this District. ECF No. 39-1 at 14–18. Defendants argue the case should be dismissed or, in the alternative, transferred to the District of Minnesota where Defendants are incorporated and have their headquarters.

### A. Propriety of Venue – Plaintiff's Patent Claims (Counts I, II and III)

Venue in civil actions is generally governed by 28 U.S.C. § 1391. Patent cases, however, have their own specific venue statute—28 U.S.C. § 1400(b). The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement *and* has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added).

For purposes of § 1400(b), "a domestic corporation 'resides' only in its State of incorporation." *TC Heartland*, 137 S. Ct. at 1517. It is undisputed that Defendants are incorporated in Minnesota and do not "reside" in South Carolina. *See* ECF No. 36, 2d Am. Compl. ¶¶ 2–3; ECF No. 39-2, Richason Decl. ¶ 9. Therefore, South Carolina is a proper venue for this patent action if and only if Defendants have "committed acts of infringement" in South Carolina and have "a regular and established place of business" in South Carolina. *See* 28 U.S.C. § 1400(b). Plaintiff bears the burden of establishing proper venue. *Hand Held Prods., Inc. v. Code Corp.*, 265 F. Supp. 3d 640, 642 (D.S.C. 2017).

In their Motion, Defendants do not address the requirement that the alleged infringement occurred in South Carolina. Accordingly, the undersigned considers that requirement established for purposes of this Motion. Defendants argue, however, that venue is inappropriate in South Carolina because they do not have a regular and established place of business in South Carolina. ECF No. 39-1 at 15–18.

To "determin[e] whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). "The mere fact that a domestic corporation 'does business' in a particular state is not enough to satisfy the 'regular and established place of business' requirement under the venue statue." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. 8:17-CV-00117-DCC, 2018 WL 1175043, at *4 (D.S.C. Feb. 14, 2018) (citing *American Cyanamid Co. v. Nopco Chemical Co.*, 388 F.2d 818 (4th Cir. 1968); *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178, 180 (S.D.N.Y. 1960)), *report and recommendation adopted*, No. 8:17-CV-00117-DCC, 2018 WL 1158425 (D.S.C. Mar. 5, 2018). Rather, to satisfy the statutory requirements, a plaintiff must demonstrate each of the following elements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.*

As for the first element, the "physical place" must be "a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. "The second *Cray* factor, a 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place

of business.'" *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1290 (Fed. Cir. 2021) (quoting *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020)). The physical place must be a location possessing an element of permanency such that the defendant's business is steadily, uniformly, and methodically conducted from the physical place. *In re Cray*, 871 F.3d at 1363 (further explaining that "if an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant"). Under the third requirement, the physical place "must be a place of *the defendant*, not solely a place of the defendant's employee." *Id.* (emphasis in original). In other words, "the defendant must establish or ratify the place of business." *Id.* Relevant considerations include whether the defendant owns or leases the place or exercises other attributes of possession or control over the place. *Id.* "Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id.*

Upon review of the pleadings and the evidence presented by the parties, the undersigned finds that Plaintiff has failed to carry his burden of demonstrating that Defendants have a regular and established place of business in this District. According to the evidence before the Court, Defendants do not maintain an office, a telephone listing, a bank account, or corporate records in South Carolina. *See* ECF No. 39-2 at ¶¶ 10–12. Similarly, Defendants do not have a shipping or distribution center in South Carolina, have not performed or had performed administrative functions in South Carolina, and have not conducted company board meetings in South Carolina. *Id.* at ¶¶ 11 and 13–15.

In his Second Amended Complaint, Plaintiff does not allege that Defendants have a physical place of business in South Carolina. Rather, Plaintiff alleges that Defendants have a

regular and established place of business in South Carolina because of the presence of "agents" located in South Carolina, namely Junction Crew Holdings, LLC d/b/a Junction Crew ("Junction Crew") in Greer, South Carolina, and Air Power in Greenville, South Carolina. ECF No. 36 at ¶ 7. In Response to Defendants' Motion, Plaintiff similarly contends that Defendants have a regular and established place of business in South Carolina because they maintain an agent in Greer, South Carolina (i.e., Junction Crew). ECF No. 42 at 11–12. According to Plaintiff, Junction Crew does not simply distribute or market Defendants' products but also produces custom rigs using Defendants' Reactor Connect product and software. *Id.* at 11. Plaintiff further argues that the subject of the infringement alleged in the first cause of action is the use of Defendants' Reactor Connect with a rig. *Id.* at 12. Plaintiff also notes that "the exact same Rig is pictured and marketed on" both Defendants' website and the agent's website. *Id.* (citing Exhibit H to Plaintiff's Response). Finally, Plaintiff notes that "intermediaries" market and sell Defendants' products "at more than 200 locations within [the] State of South Carolina, including Lowes, Home Depot, [and] Sherwin Williams." *Id.*

Courts in this District have repeatedly found that the presence of third parties distributing a defendant's products in South Carolina is irrelevant to the § 1400(b) venue analysis. *See EmeryAllen, LLC v. MaxLite Inc.*, No. 2:20-CV-4332-RMG, 2021 WL 2111159, at *4–6 (D.S.C. May 25, 2021); *Code Corp.*, 265 F. Supp. 3d at 645–46. And, there is no evidence before the Court from which to conclude that Air Power, Junction Crew, or any of the other "intermediaries" are anything other than third-party retailers or distributors of Defendants' products. Indeed, a document attached to Plaintiff's Second Amended Complaint identifies Air Power as simply a distributor of Graco products. ECF No. 36-1 at 59 (document titled "Graco's 2020 Top 20 Distributor List" that includes Air Power Inc. among the 20 companies listed under the heading

“Protective Coatings Equipment”). Similarly, Plaintiff’s allegations in the Second Amended Complaint suggests that Junction Crew is simply a distributor and retailer. *See* ECF No. 36 at ¶ 49 (“Junction Crew … markets, sells, distributes and maintains spray foam rigs build [sic] using Graco equipment[.]”).

Notwithstanding Plaintiff’s allegations that Junction Crew and Air Power are Defendants’ agents, there is no evidence before the Court that Defendants exercise the degree of control over these companies required to find an agency relationship. *See Andra Grp.*, 6 F.4th at 1287–88.

> An agency relationship is a “fiduciary relationship that arises when one person (a ‘principal’) manifests assent to another person (an ‘agent’) that the agent shall act on the principal’s behalf and subject to the principal’s control, and the agent manifests assent or otherwise consents to act.” Restatement (Third) of Agency § 1.01. The essential elements of agency are (1) the principal’s “right to direct or control” the agent’s actions, (2) “the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,” and (3) the “consent by the [agent] to act.” *Meyer v. Holley*, 537 U.S. 280, 286 (2003).

*In re Google*, 949 F.3d at 1345.

Here, there is no evidence before the Court that Defendants have the right to direct or control the employees of either Junction Crew or Air Power. To the contrary, the evidence before the Court shows that Defendants do not have an ownership interest in and do not control or have the right to control any actions of Junction Crew, which is a separate and distinct South Carolina entity and an independent third-party retailer of certain Graco products. *See* ECF No. 39-3 at 1 (SC Secretary of State report for Junction Crew); ECF No. 39-2 at ¶¶ 16–18. Similarly, the evidence before the Court demonstrates that Defendants have no ownership interest in or control over Air Power, which is a separate and distinct North Carolina entity and an independent third-party retailer of certain Graco products. *See* ECF No. 39-3 at 3–4 (NC Secretary of State report for Air Power, Inc.); ECF No. 39-2 at ¶¶ 19–21.

Further, there is no evidence that Defendants own, lease, or exercise other attributes of possession or control over Junction Crew or Air Power's physical place of business. *See In re Cray*, 871 F.3d at 1363. Although Plaintiff points to identical pictures of products on both Defendants' and the alleged agents' websites, marketing or advertisements are relevant "only to the extent they indicate that the defendant itself holds out a place for its business." *See id.* There is no evidence before the Court that Defendants hold out either Junction Crew or Air Power's South Carolina locations as Defendants' place of business. And, while Defendants likely benefit from Junction Crew and Air Power advertising and selling Defendants' products, Plaintiff has not shown that Defendants control these processes. *See Andra Grp.*, 6 F.4th at 1289 (finding no agency relationship between separate subsidiaries of Victoria's Secret and explaining that the Brand's "close control of its products and the website does not equate to 'the right to direct or control' employees at the physical Stores locations in the District"); *In re Google*, 949 F.3d at 1345 (finding no agency relationship where "Google has no right of interim control over the ISP's provision of network access beyond requiring that the ISP maintain network access to the GGC servers and allow the GGC servers to use certain ports for inbound and outbound network traffic"); *see also* Restatement (Third) of Agency § 1.01 cmt. f(1) ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."). There simply is no evidence to suggest that a "place" occupied by any of the third-party intermediaries, retailers or alleged agents in South Carolina, including Junction Crew or Air Power, is "a place of the defendant[s]" or is a place of business that was "establish[ed] or ratif[ied]" by Defendants. *See In re Cray*, 871 F.3d at 1363.

Upon review of the parties' arguments and the record before the Court, the undersigned concludes that Plaintiff has failed to demonstrate that Defendants have a regular and established

place of business in South Carolina. *See id.* at 1360. Accordingly, venue over Plaintiff's patent infringement claims is not proper in this Court under 28 U.S.C. § 1400(b). *See TC Heartland*, 137 S. Ct. at 1517 (finding venue improper in the District of Delaware, even though the defendant shipped the allegedly infringing products into Delaware, because the defendant did not have a regular and established place of business in Delaware as required by the statute); *SharkNinja Operating LLC*, 2018 WL 1175043, at *4 (finding venue improper in the District of South Carolina where defendants did not own or lease any property in South Carolina; maintain an office, a telephone listing or bank account in South Carolina; perform any administrative functions or maintain corporate records in South Carolina; have a shipping or distribution center in South Carolina; hold a company or board meeting in South Carolina; or pay taxes in South Carolina).

**B. Propriety of Venue – Plaintiff's Non-Patent Claims (Counts IV – IX)**

Defendants argue that "the Second Amended Complaint does not include allegations sufficient to plausibly suggest that a substantial part of the events giving rise to the non-patent infringement claims took place in South Carolina." ECF No. 39-1 at 19. Plaintiff also bears the burden of establishing that venue is proper as to each of his non-patent infringement claims. *See Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306, 316 (D.S.C. 1992). Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Here, venue in this District cannot be premised on § 1391(b)(1) because neither defendant resides in South Carolina, as noted above. Similarly, venue in this District is not proper under § 1391(b)(3) because this action could have been brought in the District of Minnesota, where both Defendants are considered to reside and are headquartered. Accordingly, at issue is whether venue in South Carolina lies under subsection (2), and specifically, whether "a substantial part of the events or omissions giving rise to [Plaintiff's] claim[s] occurred" in South Carolina. 28 U.S.C. § 1391(b)(2).

"In considering § 1391(b)(2), venue will be proper only if a *substantial part of the events* giving rise to Plaintiff's [non-patent] claims . . . occurred in South Carolina, or if a *substantial part of property* that is the subject of the action is situated in South Carolina." *SharkNinja Operating LLC*, 2018 WL 1175043, at *5 (emphasis in original). "The test for determining venue under § 1391(b) is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Id.* (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)); *see also Zike, LLC v. Catalfumo*, No. 6:11-1841-TMC, 2012 WL 12867973, at *3 (D.S.C. Feb. 29, 2012) ("'The statutory standard for venue focuses not on whether a defendant has made a deliberate contact—a factor in the analysis of personal jurisdiction—but on the location where events occurred.'") (*quoting MTGLQ Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003))). "[I]n determining whether events or omissions are sufficiently substantial to support venue under the . . . statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim." *Mitrano*, 377 F.3d at 405 (internal citation and quotation marks omitted).

Counts IV (Violation of FTC Order / Tortious Interference), V (Anti-Competitive Practices), and VII (Defamation) of Plaintiff's Second Amended Complaint are based on Defendants' alleged communications with three of Plaintiff's "main Distributors" or the release of a bulletin by Defendants. ECF No. 36 at ¶¶ 73–75, 82–83 and 97–98. However, there are no allegations or evidence before the Court to suggest that any of these distributors are located in South Carolina or that the bulletin was created or released specifically in South Carolina. *See* ECF No. 39-4. Similarly, Count VI (Intellectual Property Theft) is based on alleged actions occurring before the USPTO and related to the submission of claims during the prosecution of Defendants' own patents that allegedly included "subject matter taken from Intellectual Property of [Plaintiff] . . . without permission." ECF No. 36 at ¶¶ 103–07. However, the USPTO is located in Washington, D.C., and there are no allegations or evidence showing that a substantial part of the events giving rise to this claim occurred in South Carolina. *Cf. id.* at ¶ 103 (asserting that Defendants became aware of Plaintiff's provisional patent applications and "learned from published literature and public release of products"). Thus, Plaintiff has failed to show that a substantial part of the events giving rise to his claims in Counts IV though VII took place in South Carolina.

Regarding the final two claims—Count VIII (Duress) and Count IX (Intentional Infliction of Emotional Distress)—Plaintiff's Second Amended Complaint alleges that Graco's president visited Plaintiff in Charleston, South Carolina, allegedly to pressure Plaintiff "to release a product technical package system, for Graco evaluation, without an NDA (Non-Disclosure Agreement) or other agreement in place." ECF No. 36 at ¶ 121. Plaintiff makes this allegation as part of Count VIII (Duress), and he incorporates the allegation into Count IX (Intentional Infliction of Emotional Distress), which alleges that he was subject to various "intimidation tactics." *See id.* at ¶¶ 125–31. This event clearly took place in the District of South Carolina. However, Plaintiff also alleges that

Defendants communicated with Plaintiff from out of state on various occasions in writing and over the phone. Further, he alleges that Graco improperly amended Claim 17 of its patent application to incorporate Plaintiff's technology, and then accused Plaintiff's JobSight product of infringing on its patent, ultimately forcing Plaintiff to discontinue all JobSight product sales in 2019–2020. *Id.* at ¶¶ 119–31.

Although at least one of the events giving rise to Plaintiff's claims in Counts VIII and IX took place in the District of South Carolina, it cannot be said that "a substantial part of the events" occurred in South Carolina. Rather, it appears that most of the events occurred in Minnesota, where Defendants are headquartered, or before the USPTO. The undersigned thus concludes that Plaintiff has not made a prima facie showing that venue for these two claims is proper in South Carolina.

**II. Transfer**

As stated above, the District of South Carolina is not the proper venue for any of Plaintiff's claims. Section 1406(a) requires district courts to dismiss a case filed in an improper venue, or, if in the interest of justice, to transfer the case to an appropriate district. 28 U.S.C. § 1406(a). The "interest of justice" has been interpreted, in the context of § 1404, to include factors like "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment." *Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988). "Under the plain language of § 1406(a), dismissal, not transfer, is the default disposition of a case filed in an improper venue." *Code Corp.*, 265 F. Supp. 3d at 646. "Transfer, unlike dismissal, potentially restricts the plaintiff's ability to choose a proper venue, and so transfer should occur only when relevant factors show transfer instead of dismissal to be in the interest of justice." *Id.*

The decision whether to transfer or dismiss a case is committed to the sound discretion of the district court. *Jarrett v. North Carolina*, 868 F. Supp. 155, 159 (D.S.C. 1994). For example, it is within the district court's discretion to deny a request to transfer a case if it determines that "the plaintiff's attorney could reasonably have foreseen that the venue in which he filed was improper." *Id.* at 169–60 (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993)). "On the other hand, numerous courts have determined that it is in the interest of justice to transfer a case to a proper forum rather than dismiss a case where the statute of limitations might prevent a plaintiff from commencing a new suit in the proper forum." *SharkNinja Operating LLC*, 2018 WL 1175043, at *8 (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 430 n.7 (1965); 14D Charles Alan Wright, et al., Federal Practice and Procedure § 3827 n.31 (3d ed. 2011) (collecting cases)).

Here, Defendants request that this action be dismissed or, in the alternative, transferred to the District of Minnesota. Plaintiff, for his part, objects to transfer, noting his position that all nine of his claims "should be heard as part of the same Civil Action and in the District of South Carolina" and arguing that transferring this civil action to another district "is an injustice to Plaintiff, placing [him] at a great disadvantage." ECF No. 42 at 2, 5.

The undersigned finds it was reasonable for Plaintiff to believe venue was proper in this District as the product at issue was invented and developed here, Plaintiff's place of business is here, and Defendants' president visited Plaintiff here. While Plaintiff has not alleged that any claims will be barred by the statute of limitations if the case is dismissed, out of an abundance of caution, the undersigned recommends that the action be transferred rather than dismissed for improper venue. Further, based upon the above analysis, the undersigned finds that transfer of the action the United States District Court for the District of Minnesota is proper.

### III. Motion to Dismiss

As explained above, venue in this judicial district over Plaintiff's claims is improper under §§ 1400(b) and 1391(b) and transfer of this action to the United States District Court for the District of Minnesota is proper. Accordingly, the undersigned declines to address Plaintiff's Motion to Dismiss under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 39) be **GRANTED, in part,** and **DENIED, in part**. The undersigned recommends that Defendants' Motion to Dismiss for Improper Venue be **DENIED**; Defendants' Motion to Transfer be **GRANTED** and that this action be transferred to the United States District Court for the District of Minnesota; and Defendants' Motion to Dismiss for Failure to State a Claim be **DENIED** without prejudice and with leave to refile in the proper venue.

**IT IS SO RECOMMENDED**.

The parties are referred to the Notice Page attached hereto.

May 13, 2022
Charleston, South Carolina

Molly H. Cherry
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).