**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| DANIEL D. DORNEANU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:21-cv-01142-DCN-MHC |
| ) | |
| GRACO INC. and GRACO MINNESOTA ) | **ORDER** |
| INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

    This matter is before the court on Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 46, that the court grant in part and deny in part defendants Graco Inc. ("Graco") and Graco Minnesota Inc.'s ("Graco Minnesota") (together, "defendants") motion to dismiss, ECF No. 39, and transfer the case to the United States District Court for the District of Minnesota. For the reasons set forth below, the court adopts the R&R and transfers the case.

## I.  BACKGROUND

    Plaintiff Daniel Dorneanu ("Dorneanu") owns the right and titles of two separate patents: (1) U.S. Patent No. 10,426,980 (the "980 Patent"), titled "Smart Spray Foam Respiratory Mask," and (2) U.S. Patent No. 10,427,703 (the "703 Patent"), titled "Remote Monitoring and Reporting for Mobile Plural Component Manufacturing Rigs" (together, the "Patents"). ECF No. 36, 2d Amend. Compl. ¶ 18. The Patents were duly and legally issued in October and September of 2019, respectfully. Id. According to Dorneanu, the Patents protect "the intellectual property for modification of parameters of a Spray Polyurethane proportioner within a mobile rig using a mobile application" and

1

"were written to . . . benefit the safety, efficiency, and performance of the spray foam insulation application industry in the US, for any and all brands of spray foam insulation application equipment manufacturer." Id. ¶¶ 19, 27. Dorneanu further asserts that the technology described in the Patents "is not well understood, conventional, routine, or generic." Id.

Defendants are involved in the installation and use of spray foam rig equipment. Graco Minnesota is a subsidiary of Graco. Among other products, Graco develops and markets its "Reactor" line, which is a series of spray polyurethane foam equipment. In early 2017, Graco allegedly became aware of the provisional applications for the Patents, along with the intellectual property described therein. Soon after, Dorneanu and Graco discussed a potential business agreement in which Graco would be allowed to use the technology in the Patents, but no agreement was ever reached. In June 2017, Dorneanu began selling a mobile application, called "JobSight," that used the technology described in the Patents and was intended to be compatible with all types of spray foam machine models, including Graco products. In October of the same year, Dorneanu began selling another mobile application, called "Sky," also using the Patent technology.

Following the release of JobSight, Graco allegedly wrote to its distributors and customers that using JobSight in connection with one of Graco's products could potentially have negative and disadvantageous effects on the products. Further, Graco claimed it would soon produce an app that would allow a smartphone to safely operate Graco products. Subsequently, Graco altered its patent application—No. 14/766,712, titled "Remote Monitoring for Fluid Application System"—which was in the examination phase with the United States Patent and Trade Office ("USPTO"). Graco introduced an

independent patent claim—Claim 17—which allegedly described technology that was similar to that described in Dorneanu's Patents. The USPTO eventually granted Claim 17. Then, in 2018, Graco developed a mobile application, called the "Reactor app," which Dorneanu alleges uses similar technology as JobSight and Sky and infringes on the technologies described in the Patents. In 2019, Graco released another application, the "Reactor Connect," which had a similar functionality. Dorneanu alleges that Graco has used Claim 17 to intimidate him and other competitors out of the use of their products, including Dorneanu from selling JobSight, in an attempt to form a "monopoly" on spray foam application products in the United States. Id. ¶ 43.

On April 19, 2021, Dorneanu, proceeding pro se, filed the instant action against defendants. ECF No. 1. On June 7, 2021, Dorneanu filed an amended complaint. ECF No. 20. On December 3, 2021, Dorneanu filed a second amended complaint. 2d Amend. Compl. The second amended complaint, now the operative complaint, asserts nine

In 2019, after Graco sent a cease-and-desist letter to Dorneanu regarding JobSight, a Graco representative traveled to Charleston, South Carolina to meet with Dorneanu. Dorneanu alleges that during these meetings, the Graco representative pressured him into releasing a product technical package system for Graco's evaluation without requiring Graco sign a non-disclosure agreement ("NDA") or other similar agreement. Dorneanu alleges that he has been subjected to other forms of intimidation as well. Because of these alleged actions, Dorneanu claims he was forced to stop selling JobSight on the market.

causes of action.[1]  Id.  Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Cherry.

On December 17, 2021, defendants filed a motion to dismiss for failure to state a claim and for improper venue.  ECF No. 39.  On January 19, 2022, Dorneanu responded in opposition.  ECF No. 42.  Defendants replied on January 26, 2022, ECF No. 44, and Dorneanu filed a sur-reply on February 8, 2022, ECF No. 45.  On May 13, 2022, Magistrate Judge Cherry issued the R&R, recommending that the court grant in part and deny in part the motion to dismiss and transfer the case to the District of Minnesota.  ECF No. 46, R&R.  On May 31, 2022, Dorneanu filed his objections to the R&R.  ECF No. 49.  Defendants did not file objections but responded to Dorneanu's objections on June 14, 2022.  ECF No. 51.  Dorneanu did not file a reply, and the time to do so has now elapsed.  As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the

---

[1] The causes of action are: (1) infringement of Claim 1 of the 703 Patent, (2) infringement of Claim 4 of the 703 Patent, (3) infringement of Claim 1 of the 980 Patent, (4) tortious interference and violation of a 2013 consent order from the FTC, (5) violation of the federal Anti-Competitive Practices Act, (6) intellectual property theft, (7) defamation, (8) duress, and (9) intentional infliction of emotional distress.  2d Amend. Compl.

4

responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Plaintiff is proceeding pro se in this case.  Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978).  A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980).  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.  DISCUSSION

In their motion to dismiss, defendants moved to dismiss the second amended complaint in its entirety for failure to state a claim upon which relief may be granted and for improper venue.  Graco also requested, "[i]n the alternative," that the court exercise

its discretion under Rule 12(b)(3) and 28 U.S.C. § 1406(a) and transfer the case to the District of Minnesota. ECF No. 39-1 at 2.

In evaluating venue, the Magistrate Judge first separated Dorneanu's causes of actions into patent claims and non-patent claims due to the different venue rules governing each type of claim. The Magistrate Judge ultimately determined that the District of South Carolina was an improper venue for all Dorneanu's claims. After concluding that venue was improper, the Magistrate Judge further recommended that the court transfer the action in the interests of justice. Finally, since the Magistrate Judge concluded that transfer would be appropriate, the Magistrate Judge declined to address defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). Dorneanu raises three objections to the R&R. First, Dorneanu contends that venue is proper for the patent claims because two companies that were defendants' agents are incorporated in South Carolina, and as such, defendants may be said to have committed their acts of infringement in the state. Second, Dorneanu argues that venue is proper for the non-patent claims because a substantial part of the events giving rise to the claims occurred in South Carolina and a substantial part of the property that is the subject of the claims is situated in South Carolina. Finally, Dorneanu seeks to amend the complaint to add the two aforementioned companies as defendants, and he argues that venue would thus become proper. The court considers each objection in turn.

### A. Venue for Patent Claims

Counts I, II, and III in the second amended complaint allege that Graco infringed upon Dorneanu's patents. For patent infringement claims, "venue is exclusively governed by the patent venue statute, 28 U.S.C. § 1400(b), which is interpreted in

6

accordance with Federal Circuit law." NetSoc, LLC v. Chegg Inc., 2019 WL 4857340, at *2 (S.D.N.Y. Oct. 2, 2019) (citing TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S.Ct. 1514, 1517 (2017)). The patent venue statute provides that venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For purposes of patent infringement, a corporate defendant resides in its state of incorporation. TC Heartland, 137 S.Ct. at 1517. "[I]n determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there." In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985). The plaintiff bears the burden of establishing proper venue. Butler v. Ford Motor Co., 724 F. Supp. 2d 575, 586 (D.S.C. 2010).

Here, there is no dispute that both Graco and Graco Minnesota are incorporated in the State of Minnesota. See 2d Amend. Compl. ¶¶ 2–3. Therefore, for venue to be proper, Dorneanu must prove that defendants committed acts of infringement in South Carolina and have a regular and established place of business here. In the R&R, the Magistrate Judge assumed, for purposes of the motion, that the alleged infringement occurred in South Carolina because defendants did not address the requirement. However, the Magistrate Judge concluded that neither Graco entity has a regular and established place of business in the district. To determine whether defendants have a regular and established business in South Carolina, the Magistrate Judge relied upon the Cray factors, as set forth in In re Cray Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017). Under those factors, a plaintiff must demonstrate each of the following: "(1) there must be a

physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." Id. at 1360.

In both the second amended complaint and the response to defendants' motion to dismiss, Dorneanu asserted that defendants have a regular and established place of business in South Carolina because they maintain agents in the state. Dorneanu's first objection focuses on the same argument. Specifically, Dorneanu averred that two of defendants' agents, Junction Crew Holdings, LLC ("Junction Crew") and Air Power, Inc. ("Air Power"), are located in Greer and Greenville, South Carolina, respectively. The Magistrate Judge rejected this argument, finding no evidence that Junction Crew and Air Power are anything more than third-party retailers or distributors of defendants' products. In his objections, Dorneanu argues that Junction Crew and Air Power are indeed "agents" because they owe fiduciary duties to defendants. ECF No. 49 at 9–10. Dorneanu ostensibly presents this argument based on caselaw, referenced by the Magistrate Judge, holding that "a 'regular and established place of business' requires the regular, physical presence of an employer or other agent of the defendant conducting the defendant's business at the alleged 'place of business'" and that an agency relationship is "a fiduciary relationship that arises when one person (a 'principal') manifests assent . . . that the agent shall act on the principal's behalf and subject to the principal's control." In re Google, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (emphases added).

Critically, the discussion of agency in Google pertains to the second of the three Cray factors only. But to show that defendants have a regular and established business in the district, Dorneanu must satisfy all three of the Cray factors. In other words, whether defendants have satisfied the Cray factors does not hinge solely on whether Junction

8

Crew or Air Power are defendants' agents. Even if the court were to assume, for Dorneanu's benefit, that Junction Crew and Air Power were indeed defendants' agents, Dorneanu would still have to show that those agents conducted business at a physical place of the defendants. See Cray, 871 F.3d at 1360 (holding that the physical place must be a place of the defendant, not solely of the defendant's employee); Duke Univ. v. Sandoz, 2018 WL 11016705, at *2 (D. Colo. Nov. 13, 2018) (noting that the physical place refers to the place of the defendant "rather than of the defendant's employees or agents"). Therefore, although the court expresses doubt as to whether defendants had the right to direct or control the employees of Junction Crew or Air Power such that they were "agents,"[2] the court need not resolve the issue to decide the motion. Dorneanu does not object to the Magistrate Judge's findings that defendants do not have a physical place of business of their own in the district and do not "own, lease, or exercise other attributes of possession or control over Junction Crew or Air Power's physical place[s] of business." R&R at 13. In the absence of any additional argument or evidence to the contrary, the court reaches the same conclusion. Accordingly, the court finds that based on the patent venue statute and the relevant Federal Circuit caselaw, venue is improper in South Carolina.

---

[2] For example, Dorneanu argues that "[i]n 2013, the [FTC] found Graco guilty of treating all 'distributors' as 'agents.'" ECF No. 49 at 11. The court has reviewed the FTC order and finds that Dorneanu is mistaken. Dorneanu refers to a consent agreement between the FTC and Graco. See Graco Inc., 155 F.T.C. 665 (2013). The consent agreement reflected a settlement over claims that Graco acquired its two primary competitors, which limited the ability of third-party distributors to sell fast-set equipment manufactured by anyone other than Graco. See Graco Inc., 78 Fed. Reg. 24,201 (FTC Apr. 24, 2013) (analysis of agreement containing consent order). However, nothing in the consent order or agency decision suggests—as Dorneanu argues—that Graco treats or treated those distributors as agents.

### B. Venue for Non-Patent Claims

Next, the court turns to the propriety of venue for Dorneanu's non-patent claims. The question of whether venue is proper for such claims is governed by 28 U.S.C. § 1391(b), which states that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For the purposes of venue, a business entity is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Like under the patent venue statute, the plaintiff bears the burden of proving that venue is proper. Symbology Innovations, LLC v. Lego Sys., Inc., 282 F. Supp. 3d 916, 925 (E.D. Va. 2017) (citations omitted).

In his response to the motion to dismiss, Dorneanu did not raise the issue of whether defendants were subject to the court's personal jurisdiction such that they may be said to reside in the district for venue purposes. As a result, the R&R did not consider that issue. Instead, the Magistrate Judge turned to § 1391(b)(2) and determined that the substantial events or omissions giving rise to Dorneanu's claims did not occur in South Carolina. First, the Magistrate Judge looked to Counts IV, V, and VII of the second amended complaint, which arise out of allegations that defendants contacted their distributors and released a bulletin to their customers to inform them of negative and

disadvantageous effects of using Dorneanu's JobSight application. In response, Dorneanu argues that "the act of intimidation of the [] Distributors, although themselves located in Districts other than South Carolina," were done with the overall purpose of "stop[ping] Plaintiff from doing business in the District of South Carolina." ECF No. 49 at 13. Dorneanu similarly argues that the alleged defamatory statements were made with the intent to cost Dorneanu business in South Carolina. In other words, Dorneanu argues that a substantial part of the events took place in the district because Dorneanu purportedly lost his customers in South Carolina.

Section 1391(b)(2), however, does not traditionally contemplate looking to where the effects of the underlying actions occur. "In determining whether venue is proper under this provision, the Court looks to the defendant's conduct and where that conduct took place." Lalla v. G&H Towing Co., 2019 WL 11626516, at *4 (W.D. Tex. July 26, 2019) (citing Brush Creek Trading Co. v. Zoes, 2006 WL 1169577, at *1–3 (W.D. Tex. Apr. 13, 2006)). "[T]he fact that a plaintiff residing in a judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district." Id. (citing Bigham v. Envirocare, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000)); see also Story v. Republic Bank, 13 F. Supp. 3d 483, 492 (W.D. Pa. 2014) ("It is not the conduct of [the plaintiff] which gives rise to the claims in this litigation; it is Defendant's conduct and its actions . . . ."); Religious Insts. Ins. All. v. Willis Ins. Servs. of San Diego, Inc., 2005 WL 8159095, at *4 (W.D. Mo. Dec. 6, 2005) (explaining that looking to the venue where the plaintiff felt the effects of the defendant's

conduct or omissions "is not the test").[3] Dorneanu also argues that a substantial part of the property that is the subject of the action is situated in the district because his sales and market share may be considered property. However, Dorneanu does not point to any authority—and the court has found none—indicating that "sales" or "market share" may be considered property for purposes of the venue analysis. Therefore, the court overrules Dorneanu's objections as to the propriety of venue for Counts IV, V, and VII.

The Magistrate Judge further recommended that the court find that venue is improper for Count VI, which alleges intellectual property theft, because the claim is based on actions before the USPTO. The USPTO maintains its principal office in Alexandria, Virginia. Michilin Prosperity Co., Ltd v. Dudas, 2007 WL 2225890, at *2 (D.D.C. July 31, 2007). In his objections, Dorneanu reiterates his argument from his response that his trade secrets are located in and were stolen from South Carolina. Even so, Count VI in the second amended complaint is most plainly read as focusing on Graco's "prosecution process" for amending Claim 17 of its patent application and whether Graco "[i]ntroduced new subject matter" taken from Dorneanu's intellectual property as part of the process. 2d Amend. Compl. ¶¶ 106–07. Dorneanu fails to object to the Magistrate Judge's conclusion that a substantial part of the events giving rise to this cause of action occurred before the USPTO. In the absence of any such argument, the court finds that Graco's alleged conduct underlying the claim occurred in Virginia, and venue is therefore improper as to Count VI.

---

[3] Some courts have applied the principle that where a plaintiff sues a state official or challenges a state-wide policy, venue is proper in the jurisdiction where the effects of decision are felt. See Ansley v. Warren, 2016 WL 5213937, at *8 (W.D.N.C. Sept. 20, 2016) (citing Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon, 2005 WL 2709508, at *6 (E.D. Cal. Oct. 20, 2005)). However, that "exception" does not apply here.

Finally, the Magistrate Judge recommended that the court conclude that venue is improper for Counts VIII and IX. These causes of action arise, in part, out of Dorneanu's allegations that a representative from Graco visited Dorneanu in South Carolina on two occasions, allegedly to pressure Dorneanu into releasing a product technical package system without the use of an NDA. The Magistrate Judge acknowledged that under Counts VIII and IX, those events "clearly took place in the District of South Carolina." R&R at 16. However, the Magistrate Judge observed that the complaint also alleges that defendants communicated with Dorneanu "from out of state on various occasions in writing and over the phone," improperly amended Claim 17 of its patent application before the USPTO, and accused JobSight of infringing upon Graco's patent from out of state. Id. at 17. Based on those other allegations, the Magistrate Judge concluded that "most of the events occurred in Minnesota . . . or before the USPTO." Id.

In his objections, Dorneanu cites a case from the Middle District of North Carolina in support of the proposition that home visits made for the purpose of harassment or intimidation are sufficiently substantial to support venue. See McClinton-Wallace v. Chapple-Brown, 2021 WL 1648652, at *3 (M.D.N.C. Apr. 27, 2021). But in McClinton-Wallace, the claim at issue directly related to whether the defendant had called local authorities on the plaintiff for the purpose of harassing and intimidating him. Here, Dorneanu's causes of action for duress and intentional infliction of emotional distress are far broader, encompassing numerous alleged "[i]ntimidation tactics" beginning in 2017. 2d Amend. Compl. ¶ 127. McClinton-Wallace is clearly distinguishable, and beyond that case, Dorneanu fails to object to the R&R's conclusion that of the multiple forms of intimidation alleged in the complaint, a substantial portion

13

of them took place outside of South Carolina. The court therefore overrules Dorneanu's objection and adopts the Magistrate Judge's recommendation to hold that venue is improper for the last two causes of action in the complaint. As a result, the court finds that venue is improper as to all counts.

### C. Third Parties

In his third and final objection, Dorneanu argues that Junction Crew and Air Power are liable for the same claims asserted in Counts I–III of the second amended complaint because they violated 35 U.S.C. § 271, which prohibits, inter alia, anyone from "offer[ing] to sell[] or sell[ing] any patented invention." ECF No. 49 at 15. Additionally, Dorneanu seeks to add a new claim, "Count X," alleging that defendants, Junction Crew, and Air Power "conspired under a general agreement to block and to obtain Plaintiff's market shares in South Carolina." Id. As a result, Dorneanu requests that the court evaluate his objections in light of the fact that he "submitted his Motion for Leave to Amend Complaint to include Air Power [] and Junction Crew" as defendants. Id. (referencing ECF No. 50). In their response to the objections, defendants argue that Dorneanu relies on "new 'content' included in his [third] Motion to Amend" and that such arguments are not proper objections to an R&R and should be disregarded.[4] The court agrees. The motion to amend was not before the Magistrate Judge at the time the R&R was issued. As such, the court need not credit the motion to amend as part of the objections to the R&R. See Heggem v. Steffener, 2008 WL 3540220, at *1 (W.D. Wash. Aug. 11, 2008) (declining to consider a motion to amend the complaint filed after entry

---

[4] Additionally, to the extent that Dorneanu presented arguments that relied on his proposed amended complaint in support of his first two objections, the court has not considered them for the same reasons.

of an R&R). This decision is reinforced by the principle that courts should look disfavorably on motions to amend brought for the purpose of circumventing dispositive motions. See, e.g., Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc., 853 F.2d 1139, 1149 (4th Cir. 1988) (affirming denial of a motion to amend in part because "the proposed amendment appears to have been an after-thought by appellant, possibly prompted only by the concern that it would lose on the summary judgment motion"). Although Dorneanu is a pro se litigant, the court cannot ignore a clear failure to abide by certain fundamental principles underlying the Federal Rules of Civil Procedure and allow him to amend his complaint for the third time.[5]

Having determined that venue is improper in the District of South Carolina, the court turns to the Magistrate Judge's recommendation that the court transfer the case to the District of Minnesota. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). The burden is on the moving party to show by a preponderance of the evidence "that transfer to another forum is proper." State Farm Fire & Cas. Co. v. Blanton, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted). The decision to transfer a case to another venue is "committed to the discretion of the district court," In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to undertake "an individualized, case-by-case consideration of

---

[5] If Dorneanu wishes to argue that a third amendment would be supported by good cause, he may do so in the District of Minnesota, which, as discussed immediately below, is where this action now belongs.

convenience and fairness" and "to weigh in the balance a number of case-specific factors," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted).

Dorneanu does not object to the Magistrate Judge's recommendation that the court transfer the matter if it finds that venue is improper as to all claims. The court finds no clear error in the Magistrate Judge's determination that the balance of the convenience and interests of justice factors support transfer in this case. Therefore, the court transfers this case to the District of Minnesota.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R, **GRANTS IN PART** and **DENIES IN PART** the motion, and transfers this case to the District of Minnesota.

**AND IT IS SO ORDERED.**

                                                            DAVID C. NORTON
                                                            UNITED STATES DISTRICT JUDGE

**September 8, 2022**
**Charleston, South Carolina**